502124cc 00 4969



**City of Riviera Beach**
Code Compliance Division
600 W Blue Heron Blvd Suite C-234
Riviera Beach, FL 33404
(561) 882-3505

Case Number: ECC-24-00765
Case Type: Code Compliance
Date Case Established: 07/26/2024
Compliance Deadline: 08/25/20

**Violator:** 786 ISA LLC C/O ASHFAQ, SHALLA

**Mailing Address**

786 ISA LLC C/O ASHFAQ, SHALLA
23 Wagner AVE
Roosevelt, FL 11575

2 Met  10/21/

**Notice of Violation for the following location:**

**Address**
1673 W 28th ST C
Riviera Beach, FL 33404

**Parcel**
56434229010250283

You are hereby notified that an inspection was performed at the above mentioned location. The following violation(s) of the City of Riviera Beach Code was/were observed and should be addressed by the compliance date listed:

**Violation:** 304.13 - Window, Skylight and Door Frames
Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight.
**Corrective Action:** Openings around window unit A/C must be sealed to be weathertight.
**Compliance Date:** 08/25/2024

**Violation:** 304.2 - Paint
All exterior surfaces, including but not limited to, walls, doors, door and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition and generally accepted uniform appearance.
**Corrective Action:** Exterior stairwell has missing stucco to the bottom and must be repaired in a workman like manner. Entire building is in need of paint.
**Compliance Date:** 08/25/2024

**Violation:** 304.6 - Exterior Walls
All exterior walls, on main structures and accessory structures, shall be free from holes, breaks, mold, loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.
**Corrective Action:** Rotting wood paneling, and facia board needs to be replaced. Exterior stairwell has missing stucco to the bottom and must be repaired in a workman like manner.
**Compliance Date:** 08/25/2024

**Violation:** 305.3 - Interior Surfaces
All interior surfaces, including windows and doors, shall be maintained in good, clean and sanitary condition.
**Corrective Action:** Sheetrock within the bathroom walls and ceiling are beginning to crack and separate. The walls and ceiling must be repaired in a workman like manner.
**Compliance Date:** 08/25/2024

**Violation:** 308.1 - Infestation
All structures shall be kept free from insect and rodent infestation.
**Corrective Action:** Unit shows signs of having a cockroach infestation. This property must be exterminated by a licensed exterminator.
**Compliance Date:** 08/25/2024

**Violation:** 502.1 - Dwelling Units
Every dwelling unit shall contain its own bathtub or shower, lavatory, water closet, and kitchen sink which shall be maintained in a sanitary, safe working condition.
**Corrective Action:** The toilet must be repaired and operate correctly. The bathtub must be re-caulked/ re-grouted in order to prevent leaks and rust.
**Compliance Date:** 08/25/2024

**Violation:** 605.3 - Lighting Fixtures

Printed: 10/21/24

Page 1

Defendants Exh Q-B

# SHERIFF'S FINAL NOTICE OF EVICTI[ON]

UNDER THE PROVISIONS OF FLORIDA STATUTES, A COURT ORDER HAS BEEN ISSUED REQUIRING T[HAT] ALL PERSONS BE REMOVED FROM THESE PREMISES AFTER THE EXPIRATION OF 24 HOUR[S]. THE 24 HOUR TIME PERIOD WILL EXPIRE AT  10-1-24 .

NON-COMPLIANCE WITH THE COURT ORDER WILL REQUIRE THE PALM BEACH COUNTY SHERIFF'S OFFICE TO REMOVE ALL PERSONS FOUND ON THE PREMISES AND PLACE THE PLAINTIFF IN POSSESSION IN ACCORDANCE WITH FLORIDA STATUTES §83.62. ANY ANIMALS LEFT ON THE PREMISES WILL BE REMOVED BY PALM BEACH COUNTY ANIMAL CONTROL.

CASE #: 2024 CC CD 494   DATE: 9-30-24   TIME: 702

FOR FURTHER INFORMATION CALL THE SHERIFF'S OFFICE COURT SERVICES BUREAU AT (561) 355-2760.

## RIC L. BRADSHAW, SHERIFF
## PALM BEACH COUNTY, FLORIDA

DEPUTY SHERIFF _____   I.D.# 6530

## DO NOT MOLEST OR REMOVE THIS NOTICE UNDER PENALTY OF LAW!

PBSO #0174 Rev. 09/22

[Defendant]

... OF FLORIDA

TO THE SHERIFF OF PALM BEACH COUNTY, FLORIDA:

YOU ARE COMMANDED TO REMOVE ALL PERSONS FROM THE FOLLOWING DESCRIBED PROPERTY IN PALM BEACH COUNTY, FLORIDA:

[Exhibit C]

1673 W 28TH ST C
RIVIERA BEACH, FL 33404

AND TO PUT SHALLA ASHFAQ IN POSSESSION OF IT.

DATED ON: 13th of September, 2024

JOSEPH ABRUZZO
Clerk of the Circuit Court & Comptroller

By: _____
Gursahaney, Kayla K as Deputy Clerk

CAREY, RICH[ARD]
(561) 247-1266

VENUE STE 300 FORT LAUDERDALE FL 333[14]

COUNTY FL JOSEPH ABRUZZO



**West Palm Beach Housing Authority**

1530 Georgia Avenue
West Palm Beach, FL 33405

WPBHA.org

**Assisted Address:**

Mr. Randal Ferguson
fergusonrandala@gmail.com

Date: 11/5/2024

Dear Mr. Ferguson,

Re: Informal Hearing decision – termination overturned

Hearing information:

| Participant | Mr. Randal Ferguson |
|---|---|
| Date and time of hearing | 10/24/2024 at 10:00 a.m. |
| Hearing Officer | Ms. Katy Smith |
| WPBHA Representative | Ms. Nicole Hernandez, Housing Choice Voucher Specialist |
| Other attendees | Ms. Karen Montas, Housing Choice Voucher Specialist |

**Background:**

On 10/1/2024, the West Palm Beach Housing Authority (WPBHA) notified Mr. Ferguson of its decision to terminate their Housing Choice Voucher (HCV) assistance effective 10/31/2024. The reason for the termination was failure to pay tenant portion of the rent and Mr. Ferguson's subsequent eviction proceedings. This is a violation of the terms of the Voucher (HUD-Form 52646) and Federal Regulations 24 CFR 982.551 and is a mandatory termination under 24 CFR 982.552(b)(2).

Mr. Ferguson requested an informal hearing and one was scheduled for 10/24/2024. Both myself and Mr. Ferguson received the WPBHA's evidence packet prior to the informal hearing. The informal hearing was recorded.

**Summary of evidence:**

The WPBHA Program Representative, Ms. Nicole Hernandez, presented evidence in the WPBHA termination packet:

1. Cancellation Summary Sheet (dated 10/17/2024)
2. Notice of Termination (dated 10/1/2024)
3. Writ of Possession (dated 9/13/2024)
4. Request for emergency treatment denied (Court document dated 9/16/2024)

5. Emails between the WPBHA and the landlord
6. Emails from Mr. Ferguson
7. Letter form City of Riviera Beach Code Compliance Division (provided by landlord to WPBHA and dated 6/6/2024)
8. List of County Court search results for Mr. Ferguson including eviction proceedings (undated)

Ms. Hernandez stated that the reason for termination was failure to pay tenant portion of rent and the subsequent eviction proceeding brought against Mr. Ferguson by the landlord. Eviction by the landlord is a mandatory termination under Federal Regulations 24 CFR 982.552(b)(2) and Section 12 of the Housing Choice Voucher Administrative Plan.

Upon request, Ms. Hernandez provided Mr. Ferguson with a copy of the initial inspection report for the assisted property. A copy was provided to the Hearing Officer after the informal hearing had concluded.

Mr. Ferguson submitted evidence outlined in Attachment A.

Mr. Ferguson sought clarity on who undertook the initial inspection of the assisted property. He also sought clarification on the intersection of the WPBHA's housing quality standards and local and state property codes.

Mr. Ferguson stated that in March the roof at his assisted property collapsed. During this time he verbally requested a special inspection be undertaken by the WPBHA. Ms. Hernandez confirmed this request and stated that it was not progressed as the request was not received in writing.

Mr. Ferguson stated that he withheld his portion of the rent to the landlord following their failure to adequately maintain the condition of his assisted address following the roof collapse. Mr. Ferguson provided registry receipts he said demonstrated he had paid his rent portion to the courts.

Mr. Ferguson submitted Riviera Beach Inspection Code Compliance Division documentation dated 7/26/2024 and 8/26/2024 during the informal hearing. These documents were addressed to the landlord and indicate multiple code and safety violations, including that Mr. Ferguson's toilet was not working. The compliance date for these items was 8/25/2024. Ms. Hernandez stated that she had not seen this inspection information until the informal hearing and the landlord had not communicated these compliance issues to her.

Mr. Ferguson advised that he had been told by a city inspector that the property was condemned and that he needed to vacate the property within 15 days. Mr. Ferguson is no longer living at the assisted property and indicated that he is homeless. He did not notify the landlord or the WPBHA that he was vacating the property.

**Findings of fact:**

I find that:

- 24 CFR 5.703(f) outlines the intersection between HUD housing quality standards and compliance with state and local building codes.
- The WPBHA did not schedule a special inspection following Mr. Ferguson's request and was therefore not able verify the condition of the unit.

- Mr. Ferguson did provide evidence of the condition of the unit including more recent inspection reports from the same City of Riviera Beach Code Compliance Division dated July and September. This evidence demonstrates a property with multiple safety and code violations.
- The underlying eviction hearing in the Court was premised on a default judgement.
- The WPBHA's decision to terminate was compliant with Chapter 12 of the WPBHA Housing Choice Voucher Administrative plan and HUD regulations and all due process requirements have been met.

**Conclusion:**

Based on the preponderance of evidence; reviewing the facts and evidence presented at the informal hearing and relevant HUD Regulations and WPBHA policy, I conclude that because the underlying eviction hearing was premised on a default judgement and not following a hearing on the merits of the case regarding the defenses right to withhold rent in response to the condition of the property, this case is no longer a mandatory termination.

I find that the WPBHA did not provide evidence to support their case that Mr. Ferguson willfully failed to pay the tenant portion of the rent. This is because the WPBHA did not undertake a special inspection to establish the condition of the assisted unit. However, Mr. Ferguson did provide evidence on the condition of the unit including recent City Code violation reports which further supported his claim that the property did not meet habitable standards.

Therefore, because it is no longer a mandatory termination and because the WPBHA did not do the special inspection to provide evidence supporting their case that Mr. Ferguson willfully failed to pay the tenant portion of the rent, I will err on the side of the participant, Mr. Ferguson.

**Order:**

As the WPBHA Hearing Officer I have determined that the termination of your assistance will be **overturned.**

It is critically important that you ensure ongoing compliance with all program requirements moving forward. Noncompliance will result in termination of assistance as outlined in 24 CFR 982.552(c) and Section 12 of the WPBHA Housing Choice Voucher Administrative Plan.

Sincerely,


Katy Smith

**Hearing Officer**
**West Palm Beach Housing Authority**


Cc:   Program Representative
      Program Director

10

The Act "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred. . . ." Baker v. McCollan, 443 U.S. 144, n. 3 (1979). In essence, the Act provides citizens a means of confronting violations of their federal rights when those violations occurred as a result of the behavior of actors at the state level. Prior to the Act, citizens had no means of enforcing federal protections violated by state actors or their private collaborators. The early history of the Act, accordingly, primarily involved challenges to state actors' deprivation of federal rights through segregationist behavior.

Private actor liability must, like public actor liability, deprive a plaintiff of a right "secured by the Constitution and laws" of the United States. Significantly, such federal protections run far beyond traditional constitutional protections as most commonly embodied in the Bill of Rights and the Fourteenth Amendment.
They encompass a vast network of federal protections sprinkled throughout the United States Code. It is in this labyrinth of protections that much of the potential private liability under the Act lurks, coiled and ready to strike.

Causing a deprivation, however, only leads to liability for private actors when they act within the ambit of state authority. The second element of a liability claim under the Act requires a showing that the actor deprived the plaintiff of one these federal protections "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory." The "under color of law" element is the last and most formidable line of defense for a private actor in a claims under the Act. The issue, then, is when do private actors cease acting in a
private mode and commence working while cloaked with the authority of the
state?

While generally not applicable to private parties, to act "under color" of law does not require that the accused be an officer of the state; it is enough that he is a willful participant in joint activity with the state or its agents. Dennis v. Sparks, 449 U.S. 24, 29 (1980). In determining if a private party acted under color of law, courts generally start with the presumption that private conduct does not constitute governmental action. Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835 (9th Cir. 1999); see also Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). "§ 1983 excludes from its reach private conduct, no matter how discriminatory or wrong." Sutton, 192 F.3d at 835. Action taken by private individuals may be "under color of state law" only where there is
"significant" state involvement in the action. Howerton v. Gabica, 708 F.2d 380, 382, (9th Cir. 1983).

The Ninth Circuit recognizes at least four different criteria or tests to evaluate whether a private actor has engaged in "significant" state action:
(1) public function, (2) joint action, (3) compulsion or coercion, and

(4) governmental nexus. Kirtley v. Rainey, 326 F.3d 1088, 1092; *see also* Sutton,

192 F.3d at 835-36; Johnson v. Knowles, 113 F.3d 1114, 118, (9th Cir. 1996);

Prepared by and Return to:
Michael Grimm, CBO
600 W Blue Heron Blvd
Riviera Beach, Florida 33404

# CITY OF RIVIERA BEACH
## NOTICE OF PENDING ADMINISTRATION ACTION

To: 786 ISA LLC and all persons who may be claiming by, through or under 786 ISA LLC, unknown persons in possession and all others to whom it may concern.

The City of Riviera Beach, per section 22-35 of the Code of Ordinances and the attached Notice of Violation, hereby gives notice of its institution of an action to abate an Unsafe Building or Structure located on the following described property:

Street Address:   1673 W 28th St unit C
                  Riviera Beach, Florida 33404

Legal Description:   (See page 2)

PCN:   56-43-42-29-01-025-0283

Dated this __26th__ day of __August__, 2024.

Michael Grimm, Building Official
City of Riviera Beach
600 West Blue Heron Boulevard
Riviera Beach, Florida 33404
Telephone: (561) 845-4008

State of Florida
County of Palm Beach

The foregoing document was sworn and subscribed before me this __26th__ day of __August__, 2024 by Michael Grimm, Building Official for the City of Riviera Beach, who is personally known to me.

Notary Public
My Commission Expires:

CLARECE D. HAYES
Notary Public - State of Florida
Commission # HH 244964
My Comm. Expires Mar 27, 2026
Bonded through National Notary Assn.

Page 1



Defendants Exhibit D

Legal Description:

A portion of the described Parent Tract Lots 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36, Less the North 10.00 feet, thereof, ACREHOME PARK, according to the plat thereof, as recorded in Plat Book 6, Page 46, of the Public Records of Palm Beach County, Florida, together with a triangle of land bounded on the Southwest by the Northeast line of said Lot 36, bounded on the East by the West right-of-way line of Avenue S (also being the East line of Lots 111 and 112 extended Northerly) and bounded on the North by the South right-of-way line of West 28th Street (also being a line 10 feet South of and parallel with the North line of said Lots 25 through 35, extended Easterly). Said portion being more particularly described as follows: Commence at the Southwest corner of said Lot 25; thence North 90 degrees 00'00' East, along the South line of Lots 25 through 36, for a distance of 136.06 feet; thence North 00 Degrees 00'00" East for a distance of 15.70 feet to the Point of Beginning of the Tract of land hereinafter described: thence continue North 00 Degrees 00'00" East for a distance of 34.10 feet, thence North 90 Degrees 00'00" East, for a distance of 26.05 feet: thence South 00 Degrees 00'00" West for a distance of 34.10; thence South 90 Degrees 00'00" West for a distance of 26.05 feet to the Point of Beginning. A/K/A 1673-C West 28th Street, according to the Declaration of Conditions and Restrictions recorded in O.R. Book 7905, Page 73, of the Public Records of Palm Beach County, Florida.

# CITY OF RIVIERA BEACH
## NOTICE OF VIOLATION
### UNSAFE BUILDING, STRUCTURE OR PROPERTY

**Property Owner:** 786 ISA LLC

**Owner Address:** 4304 Myrtlewood Cir E, Palm Beach Gardens, FL 33418

**Property Address:** 1673 W 28th St. unit C, Riviera beach, FL 33404

**Legal Description:** A portion of the described Parent Tract Lots 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36, Less the North 10.00 feet, thereof, ACREHOME PARK, according to the plat thereof, as recorded in Plat Book 6, Page 46, of the Public Records of Palm Beach County, Florida, together with a triangle of land bounded on the Southwest by the Northeast line of said Lot 36, bounded on the East by the West right-of-way line of Avenue S (also being the East line of Lots 111 and 112 extended Northerly) and bounded on the North by the South right-of-way line of West 28th Street (also being a line 10 feet South of and parallel with the North line of said Lots 25 through 35, extended Easterly). Said portion being more particularly described as follows: Commence at the Southwest corner of said Lot 25; thence North 90 degrees 00'00' East, along the South line of Lots 25 through 36, for a distance of 136.06 feet; thence North 00 Degrees 00'00" East for a distance of 15.70 feet to the Point of Beginning of the Tract of land hereinafter described: thence continue North 00 Degrees 00'00" East for a distance of 34.10 feet, thence North 90 Degrees 00'00" East, for a distance of 26.05 feet: thence South 00 Degrees 00'00" West for a distance of 34.10; thence South 90 Degrees 00'00" West for a distance of 26.05 feet to the Point of Beginning. A/K/A 1673-C West 28th Street, according to the Declaration of Conditions and Restrictions recorded in O.R. Book 7905, Page 73, of the Public Records of Palm Beach County, Florida.

**PCN:** 56-43-42-29-01-025-0283

This Notice of Violation is issued in accordance with section 22-35 of the Code of Ordinances for the City of Riviera Beach. The Building Official of the City of Riviera Beach has declared the above-described property to be unsafe in accordance with the following violations existing on the Property (applicable provisions checked):

- ___ Insufficient or unsafe means egress not providing a safe path of travel in case of fire.
- ___ Excessive stress loads (including dead loads).
- ___ Structure damaged to extent that structural integrity is compromised.
- ___ Exterior appendage or portion of structure not securely fastened, attached or anchored.
- ___ Structure manifestly unsafe or unsanitary for purpose for which it is being used,
- ___ Structure or portion thereof likely to fully or partially collapse due to dilapidation.
- _X_ Structure constructed or maintained in violation of building codes.
- ___ Structure or property unsafe so as to constitute a public nuisance.
- ___ Structure or property dangerous and a hazard to public health and safety and welfare due to neglect and/or abandonment.
- _X_ 22-35(c)(6) Building, structure or portion thereof is manifestly unsafe for any reason or is unsanitary for the purpose for which it is being used.
- _X_ 22-35(c)(9) Building, structure property or portion thereof is in such a condition as to constitute a public nuisance.
- _X_ 22-35(c)(10) Any building, structure, property or portion thereof is unsafe, unsanitary, or not provided with adequate egress, or which constitutes a fire hazard, or is otherwise dangerous to human life, or, which in relation to the existing use, constitutes a hazard to

safety or health by reason of inadequate maintenance, dilapidation, obsolescence or abandonment.

In order to correct the unsafe condition, the building or structure described above must be repaired to comply with all City Codes on or before September 30, 2024 including but not limited to;

- This single family home has been converted into two dwelling units without building permits and/or zoning approval. Convert back to a single family home.
- Walls have been constructed, electric and plumbing work installed without obtaining the required permits and inspections. These items are violating several building codes and are dangerous in that water is leaking into electrical fixtures, electric panels are overloaded, wire sizes not verified and installed plumbing not draining properly.

All necessary permits must be secured from the City prior to any repair work. If the property is not repaired by the date specified, the City may complete such repairs and file a lien against the property for the costs incurred. If occupied, the Property must be vacated within fifteen (15) days of the date of this Notice and shall not be reoccupied until required repairs are made and the Building Official releases the property for occupancy.

**Note:  This Notice is unrelated to any action initiated by City's Code Enforcement Division. The City is seeking repair of the unsafe structure under an entirely separate provision of the City Code and the deadlines established by Code Enforcement do not excuse repair of the structure by the date specified above.**

If you wish to contest any allegation contained in this Notice of Violation, including, but not limited to, the statement of conditions and the time specified for repair or demolition, you may request a hearing before the City's Special Magistrate. Such request must be filed, in writing, with the Building Official at 600 W. Blue Heron Boulevard, Riviera Beach, Florida 33404 within fifteen (15) days of receipt of this Notice.

Date: 8-26-24

Michael Grimm, Building Official
City of Riviera Beach
Mgrimm@rivierabeach.org

| Voucher | U.S. Department of Housing | OMB No. 2577-0169 |
|---|---|---|
| Housing Choice Voucher Program | and Urban Development<br>Office of Public and Indian Housing | (exp. 04/30/2026) |

**OMB Burden Statement:** The public reporting burden for this information collection is estimated to be up to 0.05 hours, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This collection of information is required for participation in the housing choice voucher program. Assurances of confidentiality are not provided under this collection. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions to reduce this burden, to the Office of Public and Indian Housing, US. Department of Housing and Urban Development, Washington, DC 20410. HUD may not conduct and sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid control number.

**Privacy Act Statement.** The Department of Housing and Urban Development (HUD) is authorized to collect the information on this form by 24 CFR § 982.302. The information is used to authorize a family to look for an eligible unit and specifies the size of the unit. The information also sets forth the family's obligations under the Housing Choice Voucher Program. The Personally Identifiable Information (PII) data collected on this form are not stored or retrieved within a system of record.

| Please read entire document before completing form<br>Fill in all blanks below. Type or print clearly. | Voucher Number<br>**125499** |
|---|---|
| 1. Insert unit size in number of bedrooms. (This is the number of bedrooms for which the Family qualifies, and is used in determining the amount of assistance to be paid on behalf of the Family to the owner.) | 1. Unit Size<br>**1** |
| 2. Date Voucher Issued (mm/dd/yyyy) Insert actual date the Voucher is issued to the Family. | 2. Issue Date (mm/dd/yyyy)<br>**11/01/2024** |
| 3. Date Voucher Expires (mm/dd/yyyy) must be at least sixty days after date Voucher is issued. (See Section 6 of this form.) | 3. Expiration Date (mm/dd/yyyy)<br>**12/31/2024** |
| 4. Date Extension Expires (if applicable)(mm/dd/yyyy) (See Section 6. of this form) | 4. Date Extension Expires (mm/dd/yyyy) |
| 5. Name of Family Representative<br>**Randal Anton Ferguson** | 6. Signature of Family Representative | Date Signed (mm/dd/yyyy) |
| 7. Name of Public Housing Agency (PHA)<br>**West Palm Beach Housing Authority** | | |
| 8. Name and Title of PHA Official<br>**Karen Montas** | 9. Signature of PHA Official<br>K. Montas | Date Signed (mm/dd/yyyy)<br>11/1/2024 |




Defendants Exhibit F

1. **Housing Choice Voucher Program**
   A. The public housing agency (PHA) has determined that the above named family (item 5) is eligible to participate in the housing choice voucher program. Under this program, the family chooses a decent, safe and sanitary unit to live in. If the owner agrees to lease the unit to the family under the housing choice voucher program, and if the PHA approves the unit, the PHA will enter into a housing assistance payments (HAP) contract with the owner to make monthly payments to the owner to help the family pay the rent.
   B. The PHA determines the amount of the monthly housing assistance payment to be paid to the owner. Generally, the monthly housing assistance payment by the PHA is the difference between the applicable payment standard and 30 percent of monthly adjusted family income. In determine the maximum initial housing assistance payment for the family, the PHA will use the payment standard in effect on the date the tenancy is approved by the PHA. The family may choose to rent a unit for more than the payment standard, but this choice does not change the amount of the PHA's assistance payment. The actual amount of the PHA's assistance payment will be determined using the gross rent for the unit selected by the family.

2. **Voucher**
   A. When issuing this voucher the PHA expects that if the family finds an approval unit, the PHA will have the money available to enter into a HAP contract with the owner. However, the PHA is under no obligation to the family, to any owner, or to any other person, to approve a tenancy. The PHA does not have any liability to any party by the issuance of this voucher.
   B. The voucher does not give the family any right to participate in the PHA's housing choice voucher program. The family becomes participant in the PHA's housing choice voucher program when the HAP contract between the PHA and the owner takes effect.
   C. During the initial or any extended term of this voucher, the PHA may require the family to report progress in leasing a unit at such intervals and times as determined by the PHA.

3. **PHA Approval or Disapproval of Unit or Lease**
   A. When the family finds a suitable unit where the owner is willing to participate in the program, the family must give the PHA the request for tenancy approval (of the form supplied by the PHA), signed by the owner and the family, and a copy of the lease, including the HUD-prescribed tenancy addendum. **Note: Both documents must be given to the PHA no later than the expiration date stated in item 3 or 4 on top of page one of this voucher.**
   B. The family must submit these documents in the manner that is required by the PHA. PHA policy may prohibit the family from submitting more than one request for tenancy approval at a time.
   C. The lease must include, word-for-word, all provisions of the tenancy addendum required by HUD and supplied by the PHA. This is done by adding the HUD tenancy addendum to the lease used by the owner. If there is a difference between any provisions of the HUD tenancy addendum and any provisions of the owner's lease, the provision of the HUD tenancy addendum shall control.
   D. After receiving the request for tenancy approval and a copy of the lease, the PHA will inspect the unit. The PHA may not give approval for the family to lease the unit or execute the HAP contract until the PHA has determined that all the following program requirements are met: the unit is eligible; the unit has been inspected by the PHA and passes the housing quality standards (HQS); the rent is reasonable; and the landlord and tenant have executed the lease including the HUD-prescribed tenancy addendum.
   E. If the PHA approves the unit, the PHA will notify the family and the owner, and will furnish two copies of the HAP contract to the owner.
      1. The owner and the family must execute the lease.
      2. The owner must sign both copies of the HAP contract and must furnish to the PHA a copy of the executed lease and both copies of the executed HAP contract.
      3. The PHA will execute the HAP contract and return an executed copy to the owner.
   F. If the PHA determined that the unit or lease cannot be approved for any reason, the PHA will notify the owner and the family that:
      1. The proposed unit or lease is disapproved for specified reasons, and
      2. If the conditions requiring disapproval are remedied to the satisfaction of the PHA on or before the date specified by the PHA, the unit or lease will be approved.

4. **Obligations of the Family**
   A. When the family's unit is approved and the HAP contract is executed, the family must follow the rules listed below in order to continue participating in the housing choice voucher program.
   B. The family must:
      1. Supply any information that the PHA or HUD determined to be necessary including evidence of citizenship or eligible immigration status, and information for use in a regularly schedule reexamination or interim reexamination of family income and composition.

Page 2 of 2
Previous editions obsolete

form **HUD-52646** (04/2023)

  2. Disclose and verify social security numbers and sign and submit consent forms for obtaining information.
  3. Supply any information requested by the PHA to verify that the family is living in the unit or information related to family absence from the unit.
  4. Promptly notify the PHA in writing when the family is away from the unit for an extended period of time in accordance with PHA policies.
  5. Allow the PHA to inspect the unit at reasonable times and after reasonable notice.
  6. Notify the PHA and the owner in writing before moving out of the unit or terminating the lease.
  7. Use the assisted unit for residence by the family. The unit must be the family's only residence.
  8. Promptly notify the PHA in writing of the birth, adopting, or court-awarded custody of a child.
  9. Request PHA written approval to add any other family member as an occupant of the unit.
  10. Promptly notify the PHA in writing if any family member no longer lives in the unit. Give the PHA a copy of any owner eviction notice.
  11. Pay utility bills and provide and maintain any appliances that the owner is not required to provide under the lease.

C. Any information the family supplies must be true and complete.
D. The family (including each family member) must not:
  1. Own or have any interest in the unit (other than in a cooperative, or the owner of a manufactured home leasing a manufactured home space).
  2. Commit any serious or repeated violation of the lease.
  3. Commit fraud, bribery or any other corrupt or criminal act in connection with the program.
  4. Engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises.
  5. Sublease or let the unit or assign the lease or transfer the unit.
  6. Receive housing choice voucher program housing assistance while receiving another housing subsidy, for the same unit or a different unit under any other Federal, State, or local housing assistance program.
  7. Damage the unit or premises (other than damage from ordinary wear and tear) or permit any guest to damage the unit or premises.
  8. Receive housing choice voucher program housing assistance while residing in a unit owned by a parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.
  9. Engage in abuse of alcohol in a way that threatens the health, safety or right to peaceful enjoyment of the other residents and persons residing in the immediate vicinity of the premises.

**5. Illegal Discrimination**
If the family has reason to believe that, in its search for suitable housing, it has been discriminated against on the basis of age, race, color, religion, sex (including sexual orientation and gender identity), disability, national origin, or familial status, the family may file a housing discrimination complaint with any HUD Field Office in person, by mail, or by telephone. The PHA will give the family information on how to fill out and file a complaint.

**6. Expiration and Extension of Voucher**
The voucher will expire on the date stated in item 3 on the top of page one of the voucher unless the family requests an extension in writing and the PHA grants a written extension of the voucher in which case the voucher will expire on the date stated in item 4. At its discretion, the PHA may grant a family's request for one or more extensions of the initial term.

If the family needs and requests an extension of the initial voucher term as a reasonable accommodation, in accordance with part 8 of this title, to make the program accessible to a family member who is a person with disabilities, the PHA must extend the voucher term up to the term reasonably required for that purpose.



**JOSEPH ABRUZZO**

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

**RECEIPT**
5320771

Printed On:
05/08/2024 11:48
Page 1 of 1

| Receipt Number: 5320771 - Date 05/08/2024 Time 11:48AM | | | | |
|---|---|---|---|---|
| Received of: | RANDAL ANTON FERGUSON 1673 W 28TH ST C RIVIERA BEACH, FL 33404 | | | |
| Cashier Name: | CLalman | | Balance Owed: | 694.50 |
| Cashier Location: | Main Branch County Civil | | Total Amount Paid: | 694.50 |
| Receipt ID: | 11726350 | | Remaining Balance: | 0.00 |
| Division: | RL: County Civil Central - RL(Civil) | | | |

Case# 50-2024-CC-004949-XXXA-MB -- PLAINTIFF/PETITIONER: ASHFAQ, SHALLA

| Item | Balance | Paid | Bal Remaining |
|---|---|---|---|
| Fees | 694.50 | 694.50 | 0.00 |
| Case Total | **694.50** | **694.50** | **0.00** |

| Payments | | |
|---|---|---|
| Type | Ref# | Amount |
| REGISTRY CHECK | 29269760910 | 694.50 |
| Total Received | | 694.50 |
| Total Paid | | 694.50 |

How was your service today? Please visit www.mypalmbeachclerk.com/survey or send your
feedback to clerkweb@mypalmbeachclerk.com.
For office locations and information about Clerk & Comptroller services:
Visit mypalmbeachclerk.com or call (561) 355-2996.



Defend on Behalf G



**JOSEPH ABRUZZO**

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

**RECEIPT**
5408245

Printed On:
07/19/2024 11:01
Page 1 of 1

Receipt Number: 5408245 - Date 07/19/2024 Time 11:01AM

| | |
|---|---|
| Received of: | RANDAL ANTON FERGUSON<br>1673 W 28TH ST C<br>RIVIERA BEACH, FL 33404 |

| | | | |
|---|---|---|---|
| Cashier Name: | CBurgess | Balance Owed: | 565.00 |
| Cashier Location: | Main Branch County Civil | Total Amount Paid: | 565.00 |
| Receipt ID: | 11820354 | Remaining Balance: | 0.00 |
| Division: | RL: County Civil Central - RL(Civil) | | |

Case# 50-2024-CC-004949-XXXA-MB -- PLAINTIFF/PETITIONER: ASHFAQ, SHALLA

| Item | Balance | Paid | Bal Remaining |
|---|---|---|---|
| Fees | 565.00 | 565.00 | 0.00 |
| Case Total | 565.00 | 565.00 | 0.00 |

**Payments**

| Type | Ref# | Amount |
|---|---|---|
| Cash | | 600.00 |
| Total Received | | 600.00 |
| Total Paid | | 565.00 |
| Change - Cash | | 35.00 |

How was your service today? Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
For office locations and information about Clerk & Comptroller services:
Visit www.mypalmbeachclerk.com or call (561) 355-2996.



Defendants G